IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

TYSHANNA NUNESS

          Plaintiff,

    v.

SIMON AND SCHUSTER, INC; CBS
CORP; JOHN DOES 1-100; ABC
CORPS 1-100

          Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No. 16-2377 (JBS/KMW)

**OPINION**

APPEARANCES:

Toni L. Telles, Esq.
LANCE BROWN & ASSOCIATES, LLC
1898 Route 33
Hamilton, NJ 08690
    Attorney for Plaintiff

Paul C. Evans, Esq.
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103
    Attorney for Defendants

**SIMANDLE, Chief Judge:**

I. **INTRODUCTION**

    Plaintiff Tyshanna Nuness ("Plaintiff" or "Ms. Nuness")
filed this lawsuit against her employers Simon & Schuster, Inc.
and CBS Corp. ("Defendants") under the New Jersey Law Against
Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq., as she
specifically brings claims of racial harassment, constructive
discharge, and retaliatory discharge.  Plaintiff alleges that a

co-worker harassed her on one occasion by calling her a racial epithet, and after Defendants suspended the co-worker for a week and subsequently placed him back on the same shift as Plaintiff, she felt so uncomfortable that she had no choice but to resign.

Presently before the Court is Defendants' motion to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6). [Docket Item 8.] For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion without prejudice.

## II.  BACKGROUND

### A. Factual Background

The Amended Complaint alleges that from February 1, 2014 to March 20, 2015, Plaintiff, a female African-American line picker employed by Defendants, worked in "close proximity" and "alongside" Christopher Hankins, a male Caucasian line picker. (Am. Compl. at ¶¶ 4, 6-10, 20-21.) Prior to the March 1, 2015 incident described below, Mr. Hankins was "often in trouble for speaking inappropriately towards co-workers," and Defendants had even "held a department meeting" regarding his inappropriate behavior prior to the incident at issue, but did not take any further disciplinary action at that time. (Id. at ¶¶ 11-13.)

On March 1, 2015, Mr. Hankins referred to Plaintiff as a "niglet" — a "racist remark[]" that "highly offended" her. (Id. at ¶¶ 14-15, 22.) Plaintiff reported the incident to her

2

immediate supervisor, Marcellus Williams ("Ms. Williams") when
it occurred, and Ms. Williams forwarded the complaint to the
Director of Human Resources, Jacqueline Tuccillo ("Ms.
Tuccillo"). (Id. at ¶¶ 16-17.) Defendants decided to suspend Mr.
Hankins for one week given his inappropriate conduct, but
Defendants then placed him back on the same shift as Plaintiff,
thereby "forc[ing]" Ms. Nuness to work in "close proximity" to
the same person who uttered the epithet. (Id. at ¶¶ 18-20.)
Because Plaintiff now "felt uncomfortable and unsafe" working
near Mr. Hankins, she alerted Ms. Williams and Ms. Tuccillo
about her concerns, and she requested that either Mr. Hankins be
placed in a different department or on a different shift, or
that she be transferred to a different department or shift. (Id.
at ¶¶ 21-24.) Defendants denied Plaintiff's request, despite the
availability of "multiple departments and shifts available for
either party," so Plaintiff and Mr. Hankins continued to work
together on the same shift in the same department. (Id. at ¶¶
25-26.) There is no allegation that Mr. Hankins ever repeated
any racial epithet towards Ms. Nuness. Plaintiff then notified
Ms. Tuccillo that she still "felt uncomfortable coming to work"
because of Mr. Hankins's prior racist comment, and informed Ms.
Tuccillo that she would be contacting an attorney. (Id. at ¶¶
28, 31.) Ms. Tuccillo replied that "if she did not come to work

she would be resigning." (Id. at ¶ 33.) Because she "could no longer tolerate the racially charged environment," Plaintiff was absent from work for approximately one week. (Id. at ¶¶ 35-36.) On March 20, 2015, Ms. Tuccillo informed Plaintiff that her employment was terminated. (Id. at ¶ 37.)

**B. Procedural History**

Plaintiff filed suit against Defendants in the Superior Court of New Jersey, Burlington County, Law Division on January 29, 2016, and Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441 et seq on April 27, 2016. [Docket Item 1.] Plaintiff filed an Amended Complaint on May 18, 2016. [Docket Item 5.] Defendants then filed a motion to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) on May 27, 2016. [Docket Item 8.]

**III. STANDARD OF REVIEW**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the nonmoving party. A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on

4

its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).
Although Rule 8 does not require "detailed factual allegations,"
it requires "more than an unadorned, the-defendant-unlawfully-
harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (citing Twombly, 550 U.S. at 555).

Although the court must accept as true all well-pleaded
factual allegations, it may disregard any legal conclusions in
the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11
(3d Cir. 2009).  A plaintiff should plead sufficient facts to
"raise a reasonable expectation that discovery will reveal
evidence of the necessary element," Twombly, 550 U.S. at 556,
and "[a] pleading that offers labels and conclusions or a
formulaic recitation of the elements of a cause of action will
not do." Iqbal, 556 U.S. at 678.

Whether a proposed amendment to the complaint should be
permitted at this early stage, when leave to amend should be
freely granted under Rule 15(a)(2), is generally measured by
whether the proposed amendment would be futile. Adams v. Gould,
Inc., 739 F.2d 858, 864 (3d Cir. 1984). "Futility" means that
the complaint, as amended, would fail to state a claim upon
which relief could be granted. Travelers Indem. Co. v. Dammann &
Co., 594 F.3d 238, 243 (3d Cir. 2010); Shane v. Fauver, 213 F.3d
113, 115 (3d Cir. 2000).  In assessing "futility," the court

applies the same standard of legal sufficiency as applies under Rule 12(b)(6). <u>Shane</u>, 213 F.3d at 115. Thus, if a claim is vulnerable to dismissal under Rule 12(b)(6) and the Court finds that an amendment would not cure the deficiency, the request to amend will be denied.

## IV.  ANALYSIS

### A. Racial Harassment Claim

In Count I of her Amended Complaint, Plaintiff asserts a claim of racial harassment against Defendants under the New Jersey Law Against Discrimination ("NJLAD").  Section 10:5-12(a) of the NJLAD makes it unlawful for an employer to discriminate against an individual because of that person's disability or race. N.J.S.A. § 10:5-12(a).  To succeed on a racial harassment claim based upon a hostile work environment, Plaintiff must demonstrate that "the defendant's conduct (1) would not have occurred but for the employee's race; and the conduct was (2) severe or pervasive enough to make a (3) reasonable African American believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." <u>Caver v. City of Trenton</u>, 420 F.3d 243, 262 (3d Cir. 2005) (citations omitted).  Defendants argue that the utterance of a single remark by a co-worker does not meet the standard of severe or pervasive conduct necessary to properly plead a

hostile work environment claim. (Def. Br. at 4.)  Additionally,
they argue that Plaintiff has not plead enough facts
demonstrating that Defendants are vicariously liable for the
conduct of an employee. (Id. at 3-4.)

  1. Severe or Pervasive Conduct

     Defendants argue that while the use of the term "niglet" is
"clearly insensitive" and "not condoned," it does not meet the
severe or pervasive standard necessary to plead racial
harassment. (Id. at 3-4.)  The Court agrees.  In evaluating a
hostile work environment claim under both Title VII of the Civil
Rights Act of 1964 ("Title VII") and the NJLAD, both the Supreme
Court and the Third Circuit have been clear that "offhand
comments, and isolated incidents (unless extremely serious)" are
not sufficient. Faragher v. City of Boca Raton, 524 U.S. 775,
788 (1998); Caver, 420 F.3d at 262.  Severe or pervasive
harassment can be distinguished from the "mere utterance of an
ethnic or racial epithet which engenders offensive feelings in
an employee." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67
(1986).  In determining if a work environment is hostile or
abusive, courts look to totality of the circumstances, which
should include "the frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating,
or a mere offensive utterance, and whether it unreasonably

7

interferes with an employee's work performance." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 168 (3d Cir. 2013) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)); see also Caver, 420 F.3d at 262-63 ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario."). The "sine qua non of a hostile work environment claim is a 'workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Fitzgerald v. Shore Memorial Hosp., 92 F. Supp. 3d 214, 240 (D.N.J. 2015) (citations omitted). An employment discrimination law such as the NJLAD is not intended to be a "general civility code" for conduct in the workplace. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998); Herman v. Coastal Corp., 791 A.2d 238, 250 (N.J. Super. Ct. App. Div. 2002).

While Mr. Hankins's remark to Plaintiff was certainly vulgar and offensive, it does not alone rise to a sufficient level of severity or pervasiveness to sufficiently plead racial harassment under the NJLAD. Plaintiff relies on Taylor v. Metzger for the proposition that a "one incident of harassing conduct can create a hostile work environment." 706 A.2d 685, 689 (N.J. Super. Ct. App. Div. 1985). In that case, the

8

plaintiff, a county sheriff's officer, alleged that her employer, the county sheriff, violated the NJLAD when he uttered a racial epithet – "jungle bunny" – in her presence. Id. at 696. The court there held that the circumstances, specifically including that (1) the insult was clearly a racist slur, (2) it was directed against the plaintiff, (3) it was uttered by the chief ranking supervisor of her employ, the Sheriff of Burlington County, and (4) it was made in the presence of another supervising officer, were sufficient to establish the severity of the harassment. Id. at 693.

The facts of the Taylor case can be distinguished from the facts in the present matter. While the insult at issue here was clearly a racist slur and directed at the plaintiff, it was not uttered by a supervisor like in Taylor, but by a co-worker, and there are no facts in the Amended Complaint indicating that any other person was present to hear the remark. Moreover, the Taylor court noted that "it will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable [person situated as the claimant], make the working environment hostile." Id. at 689 (quoting Lehmann v. Toys R Us, Inc., 626 A.2d 445, 455 (N.J. 1993)). The court indicated that the facts there fell into that "rare and extreme case" category because the person who uttered

9

the epithet "was not an ordinary co-worker of plaintiff; he was
the  . . . chief executive of the office in which plaintiff
worked." Id. at 691.  This fact, according to that court,
"greatly magnifie[d] the gravity of the comment." Id.  As
Defendants argue, Taylor therefore "provides a blueprint for the
kind of "rare" fact pattern that may be cause for finding the
existence of a hostile work environment in a single-incident
case." (Reply Br. at 3.)  While Plaintiff is correct in noting
that there is no "requirement for a single incident of racial
harassment to be made by a supervisor in order for it to be
considered actionable under" the NJLAD, this distinction was
heavily relied on by the Taylor court in finding severe or
pervasive conduct, and Plaintiff can cite to no other case where
a court applying New Jersey law found that a single incident of
harassment was sufficiently severe or pervasive conduct. (Opp'n
at 9.)  This is especially true where the sole defendants in this
case are the employer and its parent, who are sought to be held
liable for one remark of a non-supervisory co-worker.  As a
result, Plaintiff cannot merely rely on Taylor to properly plead
a racial harassment claim under the NJLAD.

    Additionally, federal courts have dismissed claims under
Title VII based on similar facts as the present case. See
Grazioli v. Genuine Parts Co., 409 F. Supp. 2d 569, 576 n. 10

(D.N.J. 2005) ("Because the hostile work environment analyses for Title VII claims and NJLAD claims are 'strikingly similar,' the Court will analyze both simultaneously."). For instance, in Exantus v. Harbor Bar & Brasserie Restaurant, 386 F. App'x 352, 354 (3d Cir. 2010), the Court held that while defendant's use of the epithet "Haitian Fuck" several times was "indeed unpalatable and inappropriate," it did not rise to the level of severe or pervasive. See also Park v. Sec'y U.S. Dept. of Veterans Affairs, 594 F. App'x 747, 751 (3d Cir. 2014) (holding that one incident – where a co-worker asked Plaintiff "whether all Koreans were infected by a fungus – was not severe or pervasive enough to support a hostile environment claim); Lawrence v. F.C. Kerback & Sons, 134 F. App'x 570, 572 (3d Cir. 2005) (holding that while defendant's racial remark was "disrespectful and inexcusable," Plaintiff could not show a hostile work environment "based on this one isolated incident"). Similarly, in Jones v. Norton, No. 06-2924, 2008 WL 282251, at *1 (E.D. Pa. Jan. 31, 2008), the plaintiff pointed to a single altercation, during which a white co-worker called him a "black son of a bitch," a "black motherfucker" and possibly a "nigger" (Plaintiff did not hear that world clearly). The Court, while finding the co-worker's action to be "shameful and reprehensible," held that the epithets "simply d[id] not rise to

the level of racial discrimination required to make out a hostile work environment claim." Id. at *3.  Additionally, in Killen v. Northwestern Human Services, Inc., No. 07-3897, 2007 WL 2684541, at *9 (E.D. Pa. Sept. 8, 2008), Plaintiff's hostile work environment claim depended on an a series of racially harassing comments during a three-day audit in which the African American plaintiff was subjected to derogatory remarks about her dark skin tone from a lighter-skinned African American defendant.  The Court there held that defendant's alleged comments, "especially given their brief duration," did not rise to a level of severity which could be said to alter the terms of the plaintiff's employment. Id. at *6.

Plaintiff argues that "not a single case cited by Defendants involves claims of racial harassment and use of the word as severe as "nigger" or a variance of that word such as 'niglet.'" (Opp'n at 7-8.)  But this does not overcome the fact that Plaintiff's allegations, even when considered in the light most favorable to Plaintiff, do not appear to state grounds for racial harassment that is either severe or pervasive under New Jersey law given the totality of the circumstances.  Plaintiff attempts to dismiss Defendants' reliance on Feeney v. Jefferies & Co., Inc., No. 09-2708, 2010 WL 2629065 (D.N.J. June 28, 2010) because the allegation there that Plaintiff was called an "Irish

cocksucker" is "more appropriately characterized as sexually
harassing and certainly cannot be compared with the racial
epithet Plaintiff endured." (Opp'n at 8.)  Whether or not that
comment was sexually or racially harassing, Plaintiff cannot
explain away Feeney, as the case is quite instructive in
assessing Plaintiff's Amended Complaint.  In that case, not only
was Plaintiff called the epithet by his supervisor, but the
incident occurred "in front of several other . . . employees
during a meeting." 2010 WL at *2.  In addition, Plaintiff alleged
that throughout his year at the company, his supervisor
"continually harassed, verbally abused, and discriminated
against" him. Id. Here, Plaintiff describes only one incident,
not heard by anyone else, and uttered by a co-worker.  The facts
as currently plead describe merely an "isolated incident" that
does not change the terms and conditions of employment.
Faragher, 524 U.S. at 788.  Thus, Plaintiff has failed to plead
enough facts that would give rise to a hostile work environment
claim under the NJLAD.

   2. Vicarious Liability

    The Court does not need to reach the issue of vicarious
liability given that it is granting Defendants' motion to
dismiss Plaintiff's hostile work environment claim.  But even if
Plaintiff could establish a viable claim under the NJLAD, she

                              13

provides no basis for Defendants' vicarious liability for her alleged harassment.  In New Jersey, an employer is liable for a co-worker's harassing conduct only if "management-level employees knew, or in the exercise of reasonable care should have known, about the campaign of harassment." Herman v. Coastal Corp., 791 A.2d 238, 252 (N.J. Super. Ct. App. Div. 2002). Furthermore, the plaintiff must show that the employer failed to provide a reasonable avenue for complaint or was aware of the alleged harassment and failed to take appropriate remedial action. See Weston v. Pennsylvania, 251 F.3d 420, 426-27 (3d Cir. 2001)(citing Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293-94 (3d Cir. 1999)), abrogated in part on other grounds by Burlington N. & Santa Fe Railway Co. v. White, 548 U.S. 53, 67 (2006).  The employer cannot be held liable when it responds in a manner which stops the harassment. Id.

Plaintiff suggests that courts have imposed liability on employers "where the employer was negligent, i.e., where it did not have an effective anti-harassment policies (sic) to prevent the harassment." (Opp'n at 10-11.)  But Plaintiff does not plead any facts describing Defendants' anti-harassment policy and how it was inadequate.  In fact, Plaintiff admits that prior to the incident at issue, Mr. Hankins "was often in trouble for speaking inappropriately towards co-workers" (Am. Compl. at ¶

14

11), and once Mr. Hankins called Plaintiff the derogatory term,
he was "suspended for one week." (Id. at 18).  This is the
opposite of employer indifference to the racist remark of a co-
worker.  Without further facts plead regarding Defendant's anti-
harassment policies to prevent harassment, Plaintiff cannot
proceed in obtaining vicarious liability against Defendants
based on one comment from a co-worker.  Plaintiff provides no
other basis for why the Court should consider Mr. Hankins to be
"within that class of an employer organization's officials who
may be treated as the organization's proxy." Faragher, 524 U.S.
at 789.

## B. Constructive Discharge Claim

Next, Plaintiff alleges a constructive discharge claim
under the NJLAD. (Am. Compl. at ¶¶ 47-50.)  To properly plead a
constructive discharge, Plaintiff must put forth facts showing
that "the employer knowingly permitted conditions of
discrimination in employment so intolerable that a reasonable
person subject to them would resign." Aman v. Cort Furniture
Rental Corp., 85 F.3d 1074, 1084 (3d Cir. 1996); see also
Shepherd v. Hunterdon Dev. Ctr., 803 A.2d 611, 627 (N.J. 2002).
The standard "envisions a sense of outrageous, coercive, and
unconscionable requirements . . . involving more egregious
conduct than that sufficient for a hostile work environment

claim." Shepherd, 803 A.2d at 628.  Constructive discharge

requires not merely "severe or pervasive" conduct, but conduct

that is so intolerable that a reasonable person would be forced

to resign rather than continue to endure it. Zubrycky v. ASA

Apple, Inc., 885 A.2d 449, 451 (N.J. 2005).  This is an objective

test and thus an employee's subjective perceptions of unfairness

or harshness do not govern a claim of constructive discharge.

Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir.

1992).  A trial court should consider (1) the nature of the

harassment, (2) the closeness of the working relationship

between the harasser and the victim, (3) whether the employee

resorted to internal grievance procedures, (4) the

responsiveness of the employer to the employee's complaints, and

all other circumstances. Shepherd, 803 A.2d at 627.

     Given that this Court has already granted Defendants'

motion to dismiss Plaintiff's hostile work environment claim,

and under Shepherd, the constructive discharge standard

envisions more egregious conduct, the Court will also grant

Defendant's motion to dismiss the constructive discharge claim.

Nevertheless, for clarity, the Court will explain why the

Plaintiff's Amended Complaint is insufficient on this claim.

     Plaintiff argues that she has adequately plead a

constructive discharge claim because she complained to HR about

the racist remark after it was uttered, HR only suspended Mr. Hankins for a week, and then continued to schedule Plaintiff and Mr. Hankins on the same shift in the same departments despite Plaintiff's continued complaints to HR. (Opp'n at 13-14.)  After Mr. Hankins' return to back to the shift, Plaintiff alleges that Ms. Tuccillo told her that "despite her feeling uncomfortable, if she did not come to work she would be resigning." (Am. Compl. at ¶ 33.)  After Plaintiff was absent from work for one week, she was terminated. (Id. at ¶¶ 36-37.)  Importantly, however, once Mr. Hankins returned from his one-week suspension, Plaintiff does not allege that she experienced any additional racially-insensitive conduct. Instead, she simply stopped showing up for work. (Id.) The facts as currently plead therefore do not suggest the "unremitting, proximate harassment contemplated by New Jersey law." Kirschling v. Atl. City Bd. Of Educ., 604 F. App'x 153, 155 (3d Cir. 2015).  The Amended Complaint does not suggest that Defendants knowingly permitted any conditions of discrimination in employment "so intolerable that a reasonable person subject to them would resign," because once they found out about the incident, they suspended Ms. Hankins for a week, and once they placed him back in the line of duty, there were no further alleged racially-charged incidents. 85 F.3d at 1084. Therefore, even accepting Plaintiff's allegations regarding

17

constructive discharge as true, and giving her all favorable inferences, she fails to meet the pleading requirements necessary to overcome a motion to dismiss for failure to state a claim.

**C. Retaliatory Discharge Claim**

Finally, Plaintiff alleges a retaliatory discharge claim under the NJLAD, because "Defendants' actions in permitting her constructive discharge and/or terminating Ms. Nuness was motivated in part and/or determined in part by the fact that she complained about racial harassment and/or by the fact that she commented that she would be contacting an attorney." (Am. Compl. at ¶ 56.) Section 12(d) of the NJLAD prohibits retaliation against an employee because that employee "has opposed any practices or acts forbidden under [the NJLAD] or because that person has filed a complaint, testified or assisted in any proceeding under [the NJLAD.]" N.J.S.A. § 10:5-12(d); Cortes v. Univ. of Med. & Dentistry of N.J., 391 F. Supp. 2d 298, 314 (D.N.J. 2005). "Retaliatory action" is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). To state a prima facie case for retaliation under the NJLAD, a plaintiff must show that she (1) engaged in protected activity, (2) that she

18

suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action. Sanchez v. SunGard Availability Servs. LP, 362 F. App'x 283, 287 (3d Cir. 2010); see also Battaglia v. United Parcel Serv., Inc., 70 A.3d 602, 619 (N.J. 2013). Importantly, in a retaliatory discharge case, "the plaintiff bears the burden of proving that his or her original complaint – the one that allegedly triggered his or her employer's retaliation – was made reasonably and in good faith." Carmona v. Resorts Int'l Hotel, Inc., 915 A.2d 518, 521 (N.J. 2007).

There is no dispute that Plaintiff engaged in protected activity when she complained about the harassment from Mr. Hankins.  Regarding the second and third prongs, in order to constitute an "adverse employment action" for the purposes of the NJLAD, "retaliatory conduct must affect adversely the terms, conditions, or privileges of the plaintiff's employment or limit, segregate or classify the plaintiff in a way which would tend to deprive her of employment opportunities or to otherwise affect her status as an employee." Marrero v. Camden Cty Bd. of Soc. Servs., 164 F. Supp. 2d 455, 473 (D.N.J. 2001). "[T]ermination is the most obvious example of adverse employment action." Id.; see also Cortes, 391 F. Supp. 2d at 312 (noting that discharge would be an actionable adverse employment

19

action).

Plaintiff argues that Defendants' motive for failing to address her complaints and concerns and their subsequent termination of her was to retaliate for her previous complaints of racial harassment and her comment about contacting an attorney. (Opp'n at 17.) Defendants reply that Plaintiff has failed to plead any adverse employment action since she was not actually terminated, so she cannot state a claim for retaliation. (Def. Br. at 10.) Plaintiff states that after Mr. Hankins returned from his suspension, she would "no longer endure the current working environment," and Defendants "thereafter terminated Ms. Nuness's employment rather than address her complaints." (Am. Compl. at ¶ 55.) Whether Plaintiff's March 20, 2015 separation constitutes a resignation or a termination is an issue of fact that is inappropriate for resolution on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). For purposes of this Rule 12(b)(6) motion, the Court must assume that Plaintiff's separation was involuntary, that is, that it was a constructive discharge by the employer.

Additionally, Plaintiff has alleged facts sufficient to demonstrate that her discharge was causally related to her filing a complaint with HR and contacting an attorney. A plaintiff may demonstrate causation by showing: (1) a close

temporal relationship between her report and discharge, or (2)
that "the proffered evidence, looked at as a whole, . . .
raise[s] the inference [of causation].'" LeBoon v. Lancaster
Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007). Here,
the temporal proximity between Plaintiff's complaint to her
supervisors and her subsequent discharge supports an inference
of causation. "When a causal connection relies on temporal
proximity alone, courts generally require that the termination
occur within a few days of the protected activity." Incorvati v.
Best Buy Co., Inc., No. 10-1939, 2010 WL 4807062, at *3 (D.N.J.
Nov. 16, 2010) (citations omitted); see also Daniels v. Sch.
Dist. of Phila., 776 F.3d 181, 196 (3d Cir. 2015) (noting that a
plaintiff may rely on temporal proximity if "unusually
suggestive"). The Amended Complaint alleges that the racial
remark occurred on March 1, 2015, Plaintiff complained to HR
about a week later (after Mr. Hankins was suspended and
reinstated), and Plaintiff was then terminated on March 20,
2015. (Am. Compl. at ¶¶ 14, 22, 37.) This period is sufficiently
close to create an inference at this stage in the litigation
that Plaintiff's discharge was causally connected to her
complaint of harassment and her informing HR that she was
contacting an attorney.

Even if Plaintiff does not rely solely on temporal

proximity to establish causation, she could also rely on circumstances including "any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." Daniels, 776 F.3d at 196. Plaintiff pleads that after she complained about the hostile work environment and after her comment about contacting an attorney, "Defendants did nothing to remediate Ms. Nuness' complaints," and "[u]pon learning the Plaintiff would not continue to endure the intolerable working environment, Defendants thereafter terminated Ms. Nuness' employment rather than address her complaints." (Am. Compl. at ¶¶ 37, 54-55.) Thus, accepting Plaintiff's allegations as true, and giving her all reasonable inferences, she properly states a claim for retaliatory discharge.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Defendants'

motion to dismiss Count I (racial harassment) and Count II

(constructive discharge) without prejudice, and will deny

Defendants' motion to dismiss Count III (retaliatory discharge).


**November 17, 2016**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge